UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-8516
_____


UNITED STATES OF AMERICA,

                                        Plaintiff-Appellee,

                         versus

DAVERNE M. FOY,

                                        Defendant-Appellant.

_____

Appeal from the United States District Court for the
                Western District of Texas
_____


(August 2, 1994)

Before GARWOOD, SMITH and STEWART, Circuit Judges.

GARWOOD, Circuit Judge:

    Defendant-appellant, Daverne M. Foy (Foy), convicted of a firearms offense and several drug offenses, appeals his convictions and sentence, asserting numerous errors by the district court and that the evidence is insufficient to sustain his conviction of the conspiracy and firearms offenses.  We vacate and remand.

**Facts and Proceedings Below**

    At approximately 2:00 p.m. on August 7, 1991, Austin, Texas police officer Randall Milstead (Milstead) met with a confidential informant and arranged a "controlled buy" of two rocks of cocaine (commonly known as "crack") from apartment #1039 located at 2101

Burton Drive in Austin (hereinafter "the Apartment"). Milstead and another officer first searched the informant, gave him two marked twenty dollar bills and followed him to the Apartment. While under police surveillance, the informant entered the Apartment, stayed five to ten minutes and returned to a prearranged location where he gave Milstead two rocks which he stated were crack purchased at the Apartment. Milstead then conducted a preliminary field-test analysis on the rocks and determined that they contained cocaine.

Based on the information received from the confidential informant and the controlled buy, Milstead later that afternoon obtained a warrant to search for cocaine at the Apartment. That evening between 6:30 p.m. and 7:30 p.m. Milstead and several other officers from Austin's Special Mission Team executed the warrant.

Upon entering the Apartment, Officer Fred Toler (Toler) saw Joan Dickenson (Dickenson) and Rodney Thomas (Thomas) sitting in the living room. Toler saw Dickenson stand up, place a plastic baggie under a couch and sit back down. Toler retrieved the baggie and later discovered it contained .19 grams of cocaine base.

Officer Robert Dahlstrom (Dahlstrom) conducted a search of the Apartment's kitchen where he discovered 14 plastic baggies of marihuana weighing .57 grams underneath the sink; a measuring cup with a 15.17 gram "cookie" of crack on the counter; and a plastic baggie with 2.23 grams of crack hidden in an oven vent. Dahlstrom also retrieved baking soda, plastic baggies and an Exacto knife from the kitchen.[1]

---

[1] Dahlstrom testified that baking soda is used to make crack and an Exacto knife is frequently used to cut up a crack "cookie"

Milstead searched an upstairs bedroom in the Apartment. When he entered the bedroom, he encountered Kimberly Rogers (Rogers) and appellant Foy sitting on a bed. Milstead instructed the couple to lay down on the bed and handcuffed them. Milstead then saw a rock substance, weighing .77 grams, on the carpeted floor where Foy's and Rogers' feet had been. Under the bed, Milstead found a shoe box which contained an unloaded 9mm Smith & Wesson semi-automatic pistol,[2] loose rounds of ammunition, and a loaded 9mm clip. In a closet there, Milstead found an unloaded 12-gauge shotgun. He also found 55 baggies of marihuana weighing 2.03 grams hidden under a dresser in this bedroom. In addition to the guns and drugs, Milstead uncovered in this bedroom a sheet of paper with handwritten names and numbers. Milstead stated that the paper resembled a "tally sheet" or ledger often used by drug dealers to record their transactions.

Police officer Paul Ford, (Ford) searched the second upstairs bedroom which was used by Dickenson and Thomas. Ford found a loaded revolver and a box of ammunition in a nightstand. From a dresser drawer, Ford retrieved $300 in cash and 3 plastic baggies containing 31 rocks of crack.[3] On the top shelf of a walk-in closet in this bedroom, the police found a key-lock fire safe. After the safe was broken open, the police retrieved 4 cookies of crack which weighed about 91 grams and approximately $7,000 in

---

into several rocks.

[2]    Later, the police discovered that the gun was stolen.

[3]    The crack weighed approximately 6.02 grams.

currency.[4]

Dickenson, Thomas, Foy, and Rogers were charged with state drug offenses and taken to the Austin Police Department.[5]  After advising Foy of his constitutional rights Milstead interviewed him. In a signed written statement, Foy admitted to selling small baggies of marihuana.  Foy stated that he obtained the 9mm semi-automatic and the shotgun through gambling and kept the guns for protection.

A federal complaint was served against Foy on November 25, 1992.  On December 18, 1991, a three-count federal indictment was returned which charged Foy with (1) conspiring to possess with intent to distribute cocaine base; (2) possession of cocaine base with intent to distribute; and (3) using a firearm during commission of a drug trafficking offense.  Subsequently, Foy filed motions to suppress the evidence seized during the execution of the search warrant and his post-arrest statements to Milstead.  On February 27, 1992, the district court denied both motions.

On March 3, 1992, a superseding indictment adding another count was filed.  The new count charged possession of marihuana with intent to distribute.  In the superseding indictment, the marihuana possession offense was listed as count three and the

---

[4]    The two twenty dollars bills earlier given to the informant for the controlled buy were found in the fire safe.

[5]    The charges against Rogers were later dismissed.  Thomas pleaded guilty in state court to possessing cocaine with intent to distribute and served seven months.  The record does not reflect the disposition of charges against Dickenson.

firearm offense became count four.[6]

Two weeks later a superseding information was filed charging Foy with conspiracy to possess with intent to distribute less than fifty kilograms of marihuana. Pursuant to a written plea agreement with the government, Foy waived indictment and agreed to plead guilty to the offense charged in the information and cooperate with the government by providing information about drug trafficking activities in exchange for the government's dismissal of the four-count indictment and commitment "not to pursue other . . . offenses against this defendant with regard to the facts that gave rise to the Information."

At an April 20, 1992 hearing, the district court was presented with the plea agreement (hereinafter "the Agreement"). The district court questioned Foy extensively about whether he understood the consequences of pleading guilty and explained that pursuant to the Agreement the charge he was pleading guilty to carried a maximum possible sentence of five years. Thereafter, the government presented its summary of the evidence. The district court then allowed Foy to explain or enlarge on the evidence presented. At that point Foy stated he did not sell any cocaine. Foy did admit to owning a revolverSQexplaining "an old man gave me that revolver"SQbut stated he never loaded it. After questioning Foy further about the voluntariness of his plea, the district court asked Foy if he still wanted to continue in his plea of guilty.

---

[6] The firearm count was also modified so that the underlying drug trafficking offense now included possession of marihuana with intent to distribute in addition to possession of cocaine with intent to distribute and conspiracy to do so.

Foy answered yes and pleaded guilty.

The district court then stated:

"All right. I will find Mr. Foy's plea is freely and voluntarily made, that he understands the charge that he's pleaded to, that he's had competent counsel. He understands the maximum penalties. He understand (sic) his constitutional and statutory rights and he waives them and he desires to waive them and enter a plea of guilty.

"I find that he's competent to stand trial and I find that there's more than a factual basis for that plea. So I *accept the plea*, find him guilty of Count one in the superseding indictment." (emphasis added.)

Approximately six weeks later, on June 5, 1992, the district court held Foy's sentencing hearing. At the hearing, Foy presented his objections to the presentencing report (hereinafter "PSR").[7] In response to Foy's objections, the government alleged that Foy had not complied with the terms of the Agreement and moved to strike the Agreement.[8]

The district court then stated:

"I want the record to note that the Court has not accepted the plea agreement at this point in time itself, and in light of the presentence investigation, in light of the allegations and the circumstances surrounding it, the Court had a grave concern about accepting this plea agreement, and if, in fact, the position of the defendant

_____

[7]    Foy objected to the PSR's: (1) use of all 116.03 grams of crack found in the Apartment in its calculation of his relevant conduct; (2) failure to adjust for his minimal role in the cocaine trafficking offenses; (3) denial of an adjustment for acceptance of responsibility; and (4) failure to classify his criminal activity as "aberrant behavior."

[8]    The government stated that "pursuant to the objections that have been filed just recently in the case to the presentence investigation, [] he is in violation of the plea agreement with the Government. He has not complied with the term that requires him to debrief fully and honestly and completely." Foy denied any breach. The district court did not receive any evidence concerning Foy's alleged noncompliance.

is as indicated by counsel and is SQ that may be a contention of the United States that the plea agreement has been breached.

"My concern was more basic, and that is, that it looked like Mr. Orr [defense counsel] had done a tremendous job for this gentleman, because the circumstances in the presentence investigation justified one heck of a lot more sentence than the maximum, and as to SQ so the court has reservations itself."

After a few minutes discussion about whether Foy had fully debriefed or could debrief after sentencing, the court stated:

"My tendency is, at this point in time looking at the presentence investigation and looking at the overall circumstances of Mr. Foy and what the overall circumstance could be, because I haven't heard any evidence other than the investigationSQwhen I read through the presentence investigation I just realized that you had done an excellent (sic) in getting the plea agreement, and that was troublesome for the Court because I was seriously and I'm still seriously thinking of rejecting the plea agreement, but you did good lawyering, and apparently the position of the Government was that they were willing to give this very substantial break to Mr. Foy if he would provide information.

"He's not only not provided the information, he's stated a disassociation with the crime to the degree that its absolutely absurd."

Foy's lawyer then responded:

"Your Honor, that's always been the position he's taken with me from the very first interview I had with him. That's what he's always SQ."

The court then replied:

"If that's the case, then I do reject the plea agreement. I'm setting the case for trial . . . . "

The court thereafter entered an order reciting its rejection of "the plea agreement" and setting the case for trial on the superseding indictment. The order states no reasons for rejecting the plea agreement. The jury trial was held from June 29 to July 1, 1992. The government case consisted primarily of the evidence

obtained during the search of the Apartment and Foy's statements to Milstead. Foy presented two witnesses in his defense. Foy's girlfriend, Rogers, testified that she had been visiting from Chicago for four to five days prior to the August 7 search. She stated that on August 7 Foy left the Apartment at about 12:00 p.m. to play basketball and returned between 4:00 p.m. and 5:00 p.m. that afternoon. Rogers stated that while Foy was gone Robert Lynn Middleton (Middleton) arrived at the Apartment and went upstairs to Dickenson's room. She stated Middleton had come into the Apartment an hour or two before the police arrived and stayed about thirty-five minutes. Rogers testified that Middleton, a known drug dealer, was Dickenson's boyfriend. She testified that Middleton came to the Apartment two to four times a day and sometimes stayed overnight in the second bedroom with Dickenson. Rogers stated that on one occasion she observed Middleton with something that looked like a safe but she did not know if it was the same fire safe she saw police retrieve from Dickenson's closet. Rogers explained that she had not been aware before the search that there was a safe located in Dickenson's bedroom. Rogers also stated that she never saw crack or marihuana in the Apartment.

Thomas also testified for the defense. He stated that he and Dickenson leased the Apartment. He testified that he shared an upstairs room with Dickenson, but he slept downstairs when Middleton, Dickenson's boyfriend, was at the Apartment. He testified that the safe in the second bedroom had been placed there by Middleton approximately three weeks before the search and that

8

Middleton had the only key to the safe.[9]  Thomas stated that he owned the 9mm pistol found in Foy's bedroom but did not know it was stolen.  Thomas reported that Foy dealt marihuana, not crack.[10]

Foy did not testify.  On July 1, at 10:35 a.m. the jury retired to deliberate.  At 2:24 p.m. it sent a note to the court stating that it had reached a verdict on counts two, three, and four but could not reach a verdict on count one.  The court instructed the jury to continue its deliberations and attempt to reach a unanimous verdict under the court's instructions.  Within an hour the jury returned its verdict, finding Foy guilty on counts one (conspiracy to possess cocaine with intent to distribute), three (possession of marihuana with intent to distribute) and four (firearm use in relation to drug trafficking offense).  Under count two (possession of cocaine with intent to distribute) the jury found Foy guilty of the lesser included offense of simple possession of cocaine.  On September 18, 1992, Foy was sentenced to concurrent terms of ninety-seven months on count one, twelve months on count two, ninety-seven months on count three, followed by a consecutive term of sixty months on count four and five years supervised release.  Foy filed a timely notice of appeal.

---

[9]    Police Officer Ford admitted on cross-examination that the key to the safe was never found.

[10]    On cross-examination, the government presented a statement signed by Thomas which stated that Foy "sells rocks occasionally to make money."  Thomas denied making the statement, explaining that he told police that Foy sold marihuana, not cocaine. Thomas's statement also says "Daverne [Foy] and I pitched in together in order to buy the 9mm pistol from one of our friends we met on the street . . . .  Daverne obtained the shotgun . . . .  We kept the guns for protection."

## Discussion

On appeal Foy asserts several arguments. He contends that the district court erred in: (1) rejecting the Agreement; (2) denying his suppression motions; (3) instructing the jury on the conspiracy offense, firearms offense and reasonable doubt; and (4) failing to make express findings on drug quantity. Foy also claims that the evidence presented was insufficient to convict him of either the cocaine conspiracy or the firearms offense. Lastly, Foy alleges that he was denied effective assistance of counsel.[11]

## I.  Plea Agreement

Foy makes three arguments regarding the district court's rejection of the Agreement. First, Foy asserts that the district court violated Federal Rules of Criminal Procedure 32(c)(1) and 11(e) by retracting its unconditional acceptance of the Agreement after it reviewed the PSR. Foy further argues that the district court erred by failing to expressly state its reasons for rejecting the Agreement and that, in any event, the district court's decision to reject the Agreement was an abuse of its discretion.

### A.  Unconditional Acceptance

Foy asserts that the district court erred by first accepting his plea, and then rejecting the Agreement and the plea. Foy acknowledges that a defendant has "no absolute right to have a

---

[11]    Pursuant to order of the district court, Foy's appointed appellate counsel incorporated by reference into his brief all of Foy's *pro se* appellate brief. This procedure has not been challengedSQthough we do not normally countenance presentation both "pro se" and by counselSQand, under the particular circumstances here, we elect to consider all contentions in both briefs.

10

guilty plea accepted," *Santobello v. New York*, 92 S.Ct. 495, 498 (1971), but alleges that the district court cannot first unconditionally accept, then later reject, a plea.

Foy cites *United States v. Cruz*, 709 F.2d 111 (1st Cir. 1983), a First Circuit decision with facts similar to the instant case, as support for his contention.[12] In *Cruz* the district court unconditionally accepted a bargained guilty plea, but, upon review of the PSR, subsequently vacated the plea. On appeal the *Cruz* court reinstated the original guilty plea and remanded for sentencing.

The *Cruz* court observed that under Federal Rule of Criminal Procedure 32(c)(1) the PSR "shall not be submitted to the court or its contents disclosed to anyone unless the defendant has pleaded guilty or nolo contendere or has been found guilty," except that a judge may, with the written consent of the defendant, inspect a presentence report at any time. The court noted that pursuant to Federal Rule of Criminal Procedure 11(e) the district court can do one of three things with a plea bargainSQit may accept the agreement, reject the agreement or defer its decision until it has an opportunity to review the PSR. *Id*. at 114. The court then reasoned that:

---

[12] In *Cruz*, the defendant was indicted for cocaine trafficking. Later, pursuant to a plea agreement, an information charging misdemeanor narcotics possession was substituted for the indictment. After being presented with the plea agreement, the district court first questioned the defendant to determine whether he understood the rights he was waiving by pleading guilty and then unqualifiedly accepted the plea. At the sentencing hearing two months later, the district court rejected the plea.

11

> "Under Rules 11 and 32, the court could not use this information in its initial decision to accept or reject the plea unless it had defendant's consent. If a court were entitled to use the report to vacate a plea agreement it had previously accepted, there would be no reason to obtain the defendant's consent to use the report during its initial consideration of the plea agreement. It could accept the agreement unconditionally, read the presentence report in accordance with Rule 32, and then, on the basis of the report, simply change its mind and revoke its earlier acceptance. This would completely vitiate the protective consent requirements embodied in Rules 11(e) and 32(c)(1)." *Id*. at 115.

The *Cruz* court held that absent fraud on the court, once the district court accepted the plea agreement it could not simply change its mind on the basis of information revealed in the PSR.

Although *Cruz* supports Foy's contentions, we conclude it is no longer authoritative due to (1) the 1987 amendment to Rule 32(c)(1) and (2) the implementation of the United States Sentencing Guidelines (the "Guidelines").[13] First, a 1987 amendment to Rule 32(c)(1) deleted a provision which allowed a defendant to waive preparation of a PSR. The rule now requires that a PSR be prepared before imposition of a defendant's sentence.[14] Second, Guidelines

---

[13] *Cruz* was also influenced to some degree by double jeopardy concerns, relying in part on language in our opinion in *United States v. Sanchez*, 609 F.2d 761 (5th Cir. 1980). *See Cruz* at 112-113. However, the Supreme Court's subsequent decision in *Ohio v. Johnson*, 104 S.Ct. 2536, 2541-42 (1984) has been regarded by the First Circuit as effectively rejecting the double jeopardy concerns expressed in *Cruz*, and, inferentially, in *Sanchez*. *See United States v. Soto*, 825 F.2d 616, 619-20 (1st Cir. 1987); *United States v. Kurkculer*, 918 F.2d 295, 301 n.9 (1st Cir. 1990) (John R. Brown, J.). We agree in this respect with *Soto* and *Kurkculer*. This aspect of Foy's case presents no double jeopardy concerns.

[14] Prior to the 1987 amendment, Rule 32(c)(1) provided: "The probation service of the court shall make a presentence investigation and report to the court before the imposition of sentence or the granting of probation unless, with the permission

12

§ 6B1.1(c) currently instructs that a "court *shall* defer its decision to accept or reject" (emphasis added) any plea agreement involving the dismissal of charges, pursuant to Rule 11(e)(1)(A), or the agreement for a specific sentence, pursuant to Rule 11(e)(1)(C), "until there has been an opportunity to consider the presentence report." The commentary to section 6B1.1 explains:

> "Rule 11(e)(2) gives the court discretion to accept the plea agreement immediately or defer acceptance pending consideration of the presentence report. Prior to the guidelines, an immediate decision was permissible because, under Rule 32(c), Fed.R.Crim. P., the defendant could waive preparation of the presentence report. Section 6B1.1(c) reflects the changes in practice required by § 6A1.1[15] and amended Rule 32(c)(1). Since a presentence report normally will be prepared, *the court must defer acceptance of the plea agreement until the court has had an opportunity to consider the presentence report.*" U.S.S.G. § 6B1.1(c), comment (emphasis added).

We conclude that section 6B1.1(c) makes a district court's acceptance of a guilty plea contingent upon the court's review of the PSR. *See United States v. Kemper*, 908 F.2d 33, 35 (6th Cir. 1990) (rulingSQbased on the GuidelinesSQthat a district court's acceptance of a plea agreement is necessarily contingent on the

---

of the court, the defendant waives a presentence investigation and report, or the court finds that there is in the record information sufficient to enable the meaningful exercise of sentencing discretion . . . ."

Rule 32(c)(1) currently provides: "A probation officer shall make a presentence investigation and report to the court before the imposition of sentence unless the court finds that there is in the record information sufficient to enable the meaningful exercise of sentencing authority pursuant to 18 U.S.C. § 3553 . . . ."

[15] Section 6A1.1 provides: "A probation officer shall conduct a presentence investigation and report to the court before the imposition of sentence . . . ."

13

court's consideration of the presentence report).[16]   Even so, the better practice would certainly be for the district court to expressly point out at the Rule 11 hearing that although the plea met all the requirements for acceptance under Rule 11(e)(1)(B), or in the absence of an agreement, and was provisionally accepted, final acceptance was contingent on the court's review of the PSR. However, we cannot say that the failure to so advise is reversible error.   The district court here never purported to accept the Agreement itself and Foy never objected below to the court's rejection of the Agreement on the ground that the plea had already been irrevocably accepted.   It is clear that if the district court erred at all in this respect the error was not "plain" within the meaning of FED. R. CRIM. P. 52(b).   *See United States v. Olano*, 113 S.Ct. 1770, 1777-78 (1993); *United States v. Rodriguez*, 15 F.3d 408, 415 (5th Cir. 1994).   Accordingly, Foy is not entitled to reversal on his *Cruz* based theory.

B.   Reasons for Rejecting Agreement and Abuse of Discretion

Foy also argues that this court should follow the decisions of

---

[16]     *See also Fields v. United States*, 963 F.2d 105, 107-108 (6th Cir. 1992); *United States v. Johnson*, 979 F.2d 396, 398 n.2 (6th Cir. 1992).   However, the Sixth Circuit has not been entirely consistent on this point.   In *United States v. Skidmore*, 998 F.2d 372, 374-5 (6th Cir. 1993), the panel relied on *United States v. Holman*, 728 F.2d 809, 812-13 (6th Cir.), *cert. denied*, 105 S.Ct. 388 (1984), which itself had relied on *Cruz*, without noting that *Kemper* had held *Holman* to have been overruled by the Guidelines. The Eleventh Circuit, without citing *Kemper* or the relevant Guidelines provisions, has also cited *Holman* and *Cruz* with approval, as well as *United States v. Blackwell*, 694 F.2d 1325 (D.C. Cir. 1982), another pre-Guidelines case relied on by *Cruz* and *Holman*.   *See United States v. Yesil*, 991 F.2d 1527, 1532 (11th Cir. 1992).   It appears to us, however, that *Kemper*'s approach is more persuasive under the Guidelines.

14

other circuits which have ruled that a district court must expressly state its reasons for rejecting a plea agreement. *See, e.g.*, *United States v. Moore*, 916 F.2d 1131, 1135-36 (6th Cir. 1990); *United States v. Miller*, 722 F.2d 562, 566 (9th Cir, 1983); *United States v. Ammidown*, 497 F.2d 615, 623 (D.C. Cir. 1973). *But see United States v. Moore*, 637 F.2d 1194, 1196 (8th Cir. 1981). No statute nor any of the Federal Rules of Criminal Procedure or the Sentencing Guidelines require a statement of reasons for rejecting a plea agreement. Certainly the better practice would be for the district court to expressly state its reasons. However, we decline to adopt a hard and fast rule, and instead hold that a district court's decision to reject a plea agreement is proper as long as the record as a whole renders the basis of the decision reasonably apparent to the reviewing court and a decision on that basis is within the district court's discretion.

A district court's rejection of a plea agreement is reviewed for abuse of discretion. *United States v. Bean*, 564 F.2d 700, 704 (5th Cir. 1977). Foy asserts that the district court abused its discretion because it rejected the Agreement based on his refusal to admit to the relevant conduct alleged in the PSR. The government argues, however, that the district court's rejection of the plea was properly based on its belief that the defendant would receive a too lenient sentence. Foy also contends that rejection on the latter ground would not be warranted under the facts here.

A court may properly reject a plea agreement based on undue leniency. *See Bean* at 704 ("A decision that a plea bargain will result in the defendant's receiving too light a sentence . . . is

15

a sound reason for a judge's refusing to accept the agreement."); Sentencing Guidelines Policy Statement § 6B1.2(a) (if a plea agreement calls for dismissal of charges or promises not to pursue potential charges, acceptance of the agreement contemplates finding that "the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing guidelines"). However, absent some special circumstance it would ordinarily be an abuse of discretion for a court to reject a plea agreement based on a defendant's refusal to acquiesce in the findings of a PSR. Pursuant to Guidelines section 6A1.3 a defendant has the right to submit objections to the PSR.[17] Thus, a district court decision to reject a plea agreement based on a defendant objecting to a PSR and refusing to admit culpability for other offenses, would normally constitute unjustifiable coercion of a defendant to forgo his right to object to a PSR in order to preserve his plea bargain.

Here, although the district court did not expressly so state, certain of its remarks at the June 5, 1992 sentencing hearing, *if* considered in isolation, would ordinarily lead us to conclude that it rejected the Agreement because it was too lenient and did not meet the criteria set out in section 6B1.2(a). However, these remarks do *not* stand alone. The district court did not ultimately reject the Agreement *until* Foy's counsel correctly reminded the

---

[17]   Section 6A1.3(b) provides in part: "The court shall . . . provide a reasonable opportunity for the submission of oral or written objections before imposition of the sentence."

16

court that Foy had always taken the positionSQincluding expressly at the Rule 11 hearing when his plea was acceptedSQthat he was not involved with any cocaine distribution. The court's response was "*If* that's the case, then I do reject the plea agreement" (emphasis added).[18] Moreover, the court had been advised at the Rule 11 hearing, when it accepted the plea, that the Agreement contemplated dismissal of all charges against Foy except the marihuana count. Because of these remarks of the district court at the June 5 hearing, and the context in which they were made (including the lack of other express reasons for rejecting the Agreement), we are unable to conclude that the court did not reject the Agreement, at least in material part, on an improper basis, namely, Foy's repetition of the position he took at the Rule 11 hearing that he was not involved with cocaine distribution.

We accordingly vacate Foy's sentence and remand for reconsideration of the Agreement, uninfluenced by Foy's continuing to take the position he took at the Rule 11 hearing respecting the cocaine. We do not preclude the district court's ultimate rejection of the Agreement on the basis that it does not meet the standards of section 6B1.2(a).[19] In the event the district court

---

[18] The district court also had expressed some concern about the government's allegationsSQwhich Foy deniedSQthat Foy had breached the Agreement's cooperation provisions. However, the government never offered any evidence of this, the district court made no findings of breach, and we think it clear that the district court did not base its decision on this ground.

[19] We overrule Foy's contention that on the facts here rejection under the section 6B1.2(a) criteria would constitute an abuse of discretion.
Moreover, the district court may also properly reject the Agreement if it should be shown that, as the government alleged,

17

ultimately accepts the Agreement, it should vacate Foy's convictions and sentence under the indictment, and convict and sentence him under the information. If the district court ultimately rejects the Agreement, then, for the reasons stated below, Foy's convictions under the indictment may stand, but he shall be resentenced for such offenses consistent with this opinion.

As the district court may ultimately reject the Agreement, we now turn to Foy's other challenges to his convictions and sentencing under the indictment.

II. Suppression Motions

Foy asserts that the district court erred in denying his motions to suppress (1) evidence obtained during execution of the search warrant and (2) his post-arrest statements to Milstead.

A. Search Warrant

This court engages in a two-step review of a district court's denial of a motion to suppress the fruits of a search based on a warrant. *United States v. Webster*, 960 F.2d 1301, 1307 (5th Cir. 1992), *cert. denied,* 113 S.Ct. 355 (1992). Generally, the first step is to determine whether the good faith exception to the exclusionary rule applies. *Id*. The second step is to determine whether probable cause supported the warrant. *United States v.*

---

Foy had breached his obligations under the Agreement. We note in this connection that the Agreement states that "[s]hould the defendant fail to meet his obligation under this agreement, the United States Attorney . . . would be released from any duty to comply with this plea agreement." Rejection on such a basis, however, should be accompanied by an appropriate finding grounded on adequate evidence with Foy having an opportunity to challenge and rebut.

*Satterwhite*, 980 F.2d 317, 320 (5th Cir. 1992). If the good faith exception applies, this court need not reach the probable cause issue. *Webster*, 960 F.2d at 1307.

The good faith exception applies unless one of four exceptions to it is present.[20] Foy argues under the third exception that Milstead's affidavit is a "bare bones" affidavit, i.e. so lacking in any indica of probable cause as to render official belief in its existence wholly unreasonable. Foy maintains that Milstead's affidavit provided no corroboration of the informant's reliability and credibility, and that the controlled buy was not sufficient corroboration since crucial events were not personally observed by Milstead.

As reflected in Milstead's affidavit, after he received information from the confidential informant that cocaine was being sold out of the Apartment, he set up a controlled buy; pursuant to the controlled buy he searched the informant for money and drugs before allowing him to enter the Apartment; he observed the informant as he entered and left the Apartment; when the informant returned he had two rock substances resembling crack, which the informant said he had just purchased in the Apartment from a man

---

[20] Those exceptions are: "(1) If the issuing magistrate/judge was misled by information in an affidavit that the affiant knew was false or would have known except for reckless disregard of the truth; (2) where the issuing magistrate/judge wholly abandoned his or her judicial role; (3) where the warrant is based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid." *Id.* at 1307 n.4.

named "Sparkle" in the presence of a woman named Dickenson; Milstead verified that the substance the informant returned with was cocaine and the Apartment utilities were in Dickenson's name. Milstead's reliance on the warrant based on his affidavit clearly meets the good faith exception. A reasonable officer could properly conclude that these facts sufficed to establish probable cause. The district court did not err in denying Foy's motion to suppress evidence obtained during the search.

B. Oral Statements

Foy contends that the district court erred in denying his motion to suppress incriminating statements made after his arrest. The district court held a hearing on Foy's motion and concluded that Foy made a willing and voluntary waiver of his *Miranda* rights.

In reviewing a district court's ruling on a motion to suppress based on live testimony at a suppression hearing, the district court's findings of historical fact must be accepted unless clearly erroneous or influenced by an incorrect view of the law. *United States v. Laury*, 985 F.2d 1293, 1314 (5th Cir. 1993). The evidence is viewed in the light most favorable to the party that prevailed below. *Id*. In determining whether a defendant has validly waived his rights, the court looks at the totality of the circumstances surrounding the interrogation. *Id*. at 1315.

The district court determined that Foy was advised of his rights once at the time of his arrest and again at the police station. In addition, Foy placed his initials next to each of the rights listed on the confession form. After Milstead typed Foy's statements, Foy signed the confession form. The confession form

20

stated, "I do hereby knowingly, intentionally and voluntarily waive my right to be silent and my right to have a lawyer present." There is nothing in the record to suggest that Foy's statements were not freely and voluntarily made. The district court did not err in denying Foy's motion to suppress his oral statements.

III. Jury Instructions

Foy contends that the district court erred in its charge to the jury on the conspiracy offense, firearms offense, and reasonable doubt. As Foy did not object to any of these instructions during the trial we review for plain error. *See United States v. Davis*, 19 F.3d 166, 169 (5th Cir. 1994). All of the jury instructions corresponded with the *Fifth Circuit Patterned Jury Instructions.* We find no plain error.

IV. Sufficiency of the Evidence

A. Standard of Review

In reviewing sufficiency of evidence, this Court reviews all evidence in the light most favorable to the verdict and determines whether a reasonable jury could have found the essential elements of the offenses beyond a reasonable doubt. *United States v. Menesses*, 962 F.2d 420, 426 (5th Cir. 1992). A verdict of not guilty on one count does not, for purposes of our review of the sufficiency of the evidence, establish facts favorable to the defense in respect to any other count tried at the same time. *See, e.g., United States v. Powell*, 105 S.Ct. 471, 476-77 (1984); *United States v. Straach*, 987 F.2d 232, 240-41 (5th Cir. 1993); *United States v. Chaney*, 964 F.2d 437, 449 & n.33 (5th Cir. 1992).

B. Conspiracy offense

Foy alleges that the evidence is insufficient to support his conviction for conspiracy to possess cocaine with intent to distribute. In addition, Foy submits that since he was convicted of conspiracy without being convicted of the underlying substantive offense, this court should be skeptical of the verdict and engage in a critical analysis of the facts. *See United States v. Arzola-Amaya*, 867 F.2d 1504 (5th Cir.), *cert. denied,* 110 S.Ct. 322 (1989).

To establish the conspiracy offense charged in count one, the government had to prove beyond a reasonable doubt that (1) there was an agreement between two or more persons to possess cocaine with intent to distribute it; (2) each alleged conspirator knew of the conspiracy and intended to join it; and (3) each alleged conspirator voluntarily participated in the conspiracy. *United States v. Rodriguez*, 993 F.2d 1170, 1175 (5th Cir. 1993). While "'[m]ere presence at the scene and close association with those involved are insufficient factors alone; they are *relevant* factors for the jury.'" *Id*. (citing *United States v. Sanchez*, 961 F.2d 1169, 1174 (5th Cir. 1988)).

At trial the government presented evidence that Foy lived in an Apartment in which approximately 116 grams of crack were found. Foy, who admitted to selling marihuana, was found with .77 grams of crack and a paper resembling a tally sheet in his bedroom. Evidence also established that a recently cooked crack cookie weighing 15.17 grams was laying out in plain view in the kitchen. In addition to the crack, drug trafficking paraphernalia such as an Exacto knife and plastic baggies were also found in the kitchen.

Marihuana, a drug Foy admits to selling, was also found in the kitchen.

Foy's residency in the Apartment coupled with the presence of crack and a tally sheet in his bedroom offer the strongest support of his involvement in the conspiracy to sell cocaine. Viewing the evidence in the light most favorable to the government, we find it was sufficient for the jury to convict Foy of the conspiracy offense.

C.  Firearms Offense

Foy asserts that evidence he possessed two unloaded firearms[21] is insufficient to support his conviction for using or carrying a firearm during the commission of a drug trafficking offense in violation  of 18 U.S.C. § 924.  Foy notes that, in 1982 Congress amended section 924(c) to preclude application of the statute in a situation where the presence of a weapon played no part in the underlying offense.  *United States v. Wilson*, 884 F.2d 174, 176-77 (5th Cir. 1989).  Foy submits that under section 924 the government must prove "something more than strategic proximity of drugs and firearms . . . to honor Congress' concerns."  *Id*. at 177.

To establish the firearms offense alleged, the government had to prove beyond a reasonable doubt that Foy (1) used or carried (2) a firearm during or in relation to a drug trafficking crime. Although the government must show some relationship between the guns and the drug trafficking offense, "a showing that the gun was used, handled or brandished in an affirmative manner is not

---

[21]    There were no shells for the shotgun found in the bedroom. There was, however, ammunition for the 9mm.

required." *United States v. Molinar-Apodaca*, 889 F.2d 1417, 1424 (5th Cir. 1989). To demonstrate "use" of a firearm under 18 U.S.C. § 924, the government "is only obliged to show that the firearm was available to provide protection to the defendant in connection with his engagement in drug trafficking." *Id*. Thus, the government may meet its burden by showing that the weapons involved "could have been used to protect the operation and that the presence of the weapons was connected with the drug trafficking." *United States v. Featherson*, 949 F.2d 770, 777 (5th Cir. 1991), *cert. denied,* 112 S.Ct. 1698 (1992).

At trial the government presented evidence that two guns were found in Foy's bedroom along with both crack and marihuana. One of the guns was found in a box under Foy's bed along with ammunition. Foy had been sitting on the bed and near his feet was a rock of crack cocaine. The government also produced several photos showing Foy posing with the guns and his written statement that he kept the guns for "protection." Viewing the evidence in the light most favorable to the government, we conclude that the guns, ammunition and drugs found in Foy's bedroom could lead a rational trier of fact to find that Foy kept the weapons available to protect his drug trafficking operation.

V. Ineffective Assistance of Counsel Claim

In the instant direct appeal, Foy contends that he was denied effective assistance of counsel at trial. "[T]he general rule in this circuit is that a claim for ineffective assistance of counsel cannot be resolved on direct appeal when the claim has not been raised before the district court since no opportunity existed to

24

develop the record on the merits of the allegations." *United States v. Pierce*, 959 F.2d 1297, 1301 (5th Cir.), *cert. denied,* 113 S.Ct. 621 (1992) (citations omitted). Since Foy's ineffective assistance claim has not been presented to the district court, we decline to review this ground of error, without prejudice to Foy's raising this claim under 28 U.S.C. § 2255.

VI.  Drug QuantitySQSentencing

Foy contends that the district court erred by failing to make express findings regarding the quantity of crack attributable to him for calculation of his sentence under the Guidelines. Foy objected to the PSR on the ground that the total amount of crack cocaine which it attributed to him exceeded what was reasonably foreseeable to him; the probation officer declined to make any change, and Foy renewed his objection at sentencing.

Pursuant to section 2D1.1(a)(3) of the Guidelines, a defendant's offense level for a drug trafficking offense is determined by the quantity of drugs involved. Under section 1B1.3(a)(1), the applicable drug quantity includes not only drugs with which the defendant was directly involved, but also drugs that can be attributed to him as part of his "relevant conduct." Relevant conduct for conspiratorial activity is defined as the "conduct of others in furtherance of the execution of the jointly-undertaken criminal activity that was reasonably foreseeable by the defendant." U.S.S.G. § 1B1.3(a)(1), comment. (n.1) (Nov. 1991).[22]

---

[22]  Since Foy was sentenced on September 18, 1992, the Guidelines which were in effect from November 1, 1991, through October 31, 1992, are applicable. *United States v. Gross*, 979 F.2d 1048, 1050-51 (5th Cir. 1992) (citing 18 U.S.C. §

25

"[R]easonable foreseeability does not follow automatically from proof that [the defendant] was a member of the conspiracy." *United States v. Puma*, 937 F.2d 151, 160 (5th Cir. 1991), *cert. denied*, 112 S.Ct. 1165 (1992). "The reasonable foreseeability required [under the Guidelines] requires a finding separate from a finding that the defendant was a conspirator." *Id.* (citing *United States v. Warters*, 885 F.2d 1266, 1273 (5th Cir. 1989)). Therefore, "for a sentencing court to attribute to a defendant a certain quantity of drugs, the court must make two separate findings: (1) the quantity of drugs in the entire conspiracy, and (2) the amount which each defendant knew or should have known was involved in the conspiracy." *United States v. Puig-Infante*, 19 F.3d 929, 942.

The government argues that the district court findings were adequate because it implicitly adopted the findings of the PSR on quantity and foreseeability when it overruled Foy's objections to the PSR.[23] We do not agree. Although it may be reasonable to infer that the district court accepted the PSR's findings on the quantity involved in the entire conspiracy, such findings are still insufficient since the PSR does not specifically address reasonable

3553(a)(4)). In the 1992 amendments to the Guidelines, the above-quoted language was incorporated into the body of section 1B1.3. Section 1B1.3 now reads in relevant part: "in the case of a jointly undertaken criminal activity [the defendant may be held accountable for], all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1)(B) (Nov. 1993).

[23] The district court stated: "I think that there's no question that the amount of cocaine in Miss Davenport's (sic) house, not even counting the cooking the kitchen, is an amount that must be taken into consideration on the sentencing guidelines."

26

foreseeability.[24] *See United States v. Webster*, 960 F.2d 1301, 1310 (5th Cir. 1992). Thus, we vacate the sentence and remand to the district court for specific findings regarding the amount of crack reasonably foreseeable to Foy.[25]

VII. Other Sentencing Concerns

The district court erred in sentencing Foy to ninety-seven months for possession with intent to distribute less than fifty kilograms of marihuana under count three. Pursuant to 21 U.S.C. § 841(b)(1)(D), the maximum term for this offense is sixty months. As the district court's sentence exceeded the statutory maximum, we vacate and remand count three for resentencing.

**Conclusion**

Accordingly, we VACATE Foy's sentence and REMAND the cause to the district court to reconsider its rejection of the Agreement consistently with this opinion. If upon reconsideration the district court determines that the plea bargain should not be rejected, he shall vacate Foy's convictions and sentences under the indictment, and convict and sentence him in accordance with the Agreement. If the district court, on such reconsideration, rejects the Agreement based on an appropriate factor, the court should then

---

[24] In responding to Foy's objections regarding a finding on reasonable foreseeability, the PSR concluded Foy played a significant role in the drug-trafficking enterprise and made no changes in its quantity calculation. However, this conclusion of the PSR cannot be attributed to the district court, since the district court determined that Foy was only a minor participant in the conspiracy.

[25] We reject Foy's contention that there was no appropriate basis on which the district court properly attributed to Foy all the cocaine in the Apartment as reasonably foreseeable to him.

27

resentence Foy for the indicted offenses of which he was convicted based on a specific finding respecting reasonable foreseeability of drug quantity for count one and within the statutory maximum for count three.

                                   VACATED and REMANDED