**UNITED STATES of America**

v.

**Robert C. RUCH, Jr.**

**Crim. A. No. 95–370.**

United States District Court,
E.D. Pennsylvania.

Nov. 10, 1995.

Order Denying Reconsideration
Nov. 22, 1995.

Jerome R. Richter, Michael D. Shepard, Blank, Rome, Comisky & McCauley, Philadelphia, PA, for Defendant.

Michael L. Levy, U.S. Attorney's Office, Philadelphia, PA, for U.S.

## ORDER–MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

AND NOW, this 10th day of November, 1995, upon consideration of the Government's Submission Regarding Rule 11(e)(1)(C) Plea (docket no. 34), the defendant's Memorandum in Support of Rule 11(e)(1)(C) Plea Agreement (docket no. 33), and after a hearing with counsel for the parties, it is hereby **ORDERED** that the parties' Rule 11(e)(1)(C) plea agreement is **REJECTED** for the following reasons:

### I. *Factual Background*

1. On July 13, 1995, the defendant was charged in a five-count indictment with income tax evasion in violation of 26 U.S.C. §§ 7201 and 7206(1). On October 12, 1995, the defendant and the Government submitted a plea agreement to the Court in connection with a change-of-plea hearing that was scheduled for October 13, 1995.

2. In the plea agreement, the Government agreed to dismiss counts 1, 2, 4, and 5 of the indictment, in exchange for the defendant pleading guilty to count 3 of the indictment. The Government and the defendant also agreed that "[t]his plea is entered under Rule 11(e)(1)(C), Fed.R.Crim.P. ... [and that] the applicable tax loss is more than $20,000, but less than $40,000, resulting in an offense level of 10." *See* Plea Agreement, ¶ 6.[1] In addition, the parties stipulated that

---

1. Federal Rule of Criminal Procedure 11(e)(1) provides the following:

 **(e) Plea Agreement Procedure**
 **(1) In General.** The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:
 (A) move for dismissal of other charges; or
 (B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or
 (C) agree that a specific sentence is the appropriate disposition of the case.

the defendant would receive a two-level reduction for acceptance of responsibility. Using the 1990 Guidelines Manual, the Government and the defendant calculated that the defendant's total offense level would be 8, the criminal history category would be I, and the guidelines range would be 2–8 months of incarceration. Under the terms of the 1990 Guidelines Manual, a total offense level of 8 falls within Zone B. Thus, according to the plea agreement, the defendant would be eligible for a sentence involving a combination of conditions requiring intermittent confinement, community confinement, or home detention.[2] The Court heard the arguments of counsel on October 13, 1995, and took the matter under advisement.

## II. *The Court's Discretion*

3. The Government argues that Section 6B1.1(c) of the United States Sentencing Guidelines prescribes the procedure that the Court should follow in deciding whether to accept or reject the proffered plea agreement. Section 6B1.1(c) provides that,

> The Court *shall* defer its decision to accept or reject any nonbinding recommendation pursuant to Rule 11(e)(1)(B), and the Court's decision to accept or reject any plea agreement pursuant to Rules 11(e)(1)(A) and 11(e)(1)(C) until there has been an opportunity to consider the presentence report, unless a report is not required under § 6A1.1.

Section 6B1.1(c), United States Sentencing Guidelines (emphasis added). The Government contends that this language requires the Court to consider the presentence report before deciding whether to accept or reject the plea agreement, unlike when a plea agreement is proffered pursuant to Federal Rule of Criminal Procedure 11(e)(1)(B).

■ 4. The mandatory language of Section 6B1.1(c), however, contradicts the permissive language of Rule 11(e)(2) of the Federal Rules of Criminal Procedure. Rule 11(e)(2) provides that, "[i]f the agreement is of the type specified in subdivision (e)(1)(A)

or (C), the court *may* accept or reject the agreement, or *may* defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report." Fed.R.Crim.P. 11(e)(2) (emphasis added). In other words, while Section 6B1.1(c) mandates that a court consider a presentence report before accepting or rejecting a plea agreement, the plain language of Rule 11(e)(2) yields to the discretion of the court whether to follow such a procedure.

■ 5. "The Sentencing Commission promulgates [the sentencing] guidelines by virtue of an express congressional delegation of authority for rulemaking, *see Mistretta v. United States*, 488 U.S. 361, 370–80, 109 S.Ct. 647, 654–58, 102 L.Ed.2d 714 (1989), and through the informal rulemaking procedures in 5 U.S.C. § 553, *see* 28 U.S.C. § 994(x)." *Stinson v. United States*, 508 U.S. 36, ——, 113 S.Ct. 1913, 1919, 123 L.Ed.2d 598 (1993). Thus, the guidelines are the equivalent of legislative rules adopted by federal agencies, and the Commission's policy statements and commentary regarding the guidelines are akin to an agency's interpretation of its own legislative rules. *Id.* The guidelines as well as "[t]he policy statements and commentary contained in the guidelines are binding on the federal courts." *United States v. Holifield*, 53 F.3d 11, 13 n. 2 (3rd Cir.1995). When a particular guideline or the Commission's interpretation of that guideline violates the Constitution or a federal statute, however, the Constitution or statute obviously must be given "controlling weight." *Stinson v. United States*, 508 U.S. at —— – ——, 113 S.Ct. at 1918–19.

6. Chapter 6, Part B of the guidelines, entitled "Plea Agreements," contains several policy statements that provide standards for courts to use in deciding whether to accept or reject plea agreements. The Sentencing Commission itself acknowledges that Rule 11 of the Federal Rules of Criminal Procedure takes precedence over Chapter 6 of the guidelines. "The Commission decided not to make major changes in plea agreement prac-

---

The court shall not participate in any such discussions.

**2.** If the 1994 Guidelines Manual were used, a total offense level 8 would fall within Zone A, making the defendant eligible for straight probation.

tices in the initial guidelines, but rather to provide guidance by issuing general policy statements concerning the acceptance of plea agreements in Chapter 6, Part B (Plea Agreements). The rules set forth in Fed. R.Crim.P. 11(e) govern the acceptance or rejection of such agreements." *See* United States Sentencing Guidelines, Chapter 1, Part A(4)(c).[3] Thus, the Court concludes that Rule 11(e)(2) trumps Section 6B1.1(c), and that under Rule 11(e)(2), it has the discretion to accept or reject a plea agreement either before or after it considers a presentence report.[4] In this case, for the reasons set forth below the Court will reject the plea agreement before ordering the presentence report.[5]

III. *The Amount of the Tax Loss*

◼◼◼ 7. The federal courts of appeal are divided regarding the issue whether a district court must expressly state its reasons for rejecting a plea agreement. *Compare United States v. Miller*, 722 F.2d 562, 566 (9th Cir.1983) (court must expressly state reason for rejecting plea agreement) *with U.S. v. Foy*, 28 F.3d 464, 472 (5th Cir.1994) (decision to reject a plea agreement is proper as long as the record as a whole renders the basis of the decision reasonably apparent to the reviewing court and a decision on that basis is within the district court's discretion). While the Third Circuit has not spoken on this issue, the Court believes that it is the better practice to set forth its reasons for rejecting plea agreements.

◼◼ 8. Upon a review of the plea agreement, the indictment and the supporting documentation proffered by the Government, the Court concludes that the amount of the loss agreed upon by the Government with the defendant, which would form the basis for determining the defendant's offense level, understates the amount of the loss caused by the defendant's conduct. If the Court concludes that accepting the plea agreement may result in too light a sentence to the defendant, it may reject such agreement. *See U.S. v. Foy*, 28 F.3d at 472 (quoting *United States v. Bean*, 564 F.2d 700, 704 (5th Cir.1977)) ("A decision that a plea bargain will result in the defendant's receiving too light a sentence . . . is a sound reason for a judge's refusing to accept the agreement."). The Court finds this to be the case here.

9. The Government calculates that the loss caused by the defendant's alleged tax fraud is $39,644.22. In reaching this total, contrary to the IRS's determination, the Government agreed that certain personal expenses such as carpeting, windows, and aluminum siding for the defendant's home, which he charged off to his corporation, were ordinary and necessary business expenses. *See* Government's Change of Plea Memorandum, at 5 n. 4. The Government also agreed that the defendant could take certain travel and entertainment deductions that the IRS had not allowed. *See* Government's Change of Plea Memorandum, at 7 n. 5. It is the Government's failure to include the disputed personal expense deductions in its calculation

---

3. In a similar vein, the Commission stated that, "[b]ecause of the difficulty in anticipating problems in [the area of plea agreement practice], and because the sentencing guidelines are themselves to some degree experimental, *substantive restrictions on judicial discretion would be premature at this stage of the Commission's work.*" *See* United States Sentencing Guidelines, Chapter 6, Part B, Introductory Commentary (emphasis added).

4. Another reason that the Court is not bound by Section 6B1.1(c) is that the policy statements contained in Chapter 6 do not interpret substantive guidelines. *See Stinson v. United States*, 113 S.Ct. at 1917–18.

5. The Government and the defendant urge the Court to delay ruling upon acceptance of the plea until it has considered the presentence investigation report. The Court will not do so. When the

issues raised in accepting or rejecting a plea agreement are strictly legal or when it appears from the face of the parties' submissions that the factual predicate upon which the parties have based their agreement is incorrect, it would be a waste of judicial resources for such case to proceed, nonetheless, with the exhaustive process of compiling a presentence investigation report. Yet, should the defendant be convicted after trial, or if a plea under Federal Rule of Criminal Procedure 11(e)(1)(B), *see* footnote 1 *infra*, is entered in this case, the parties will remain free to argue to the probation officer, or to the Court at the time of sentencing, the soundness of their position concerning the amount of the loss, and nothing in this order-memorandum shall bind the Court from considering anew the amount of the loss in that procedural context.

of the loss caused by the defendant's conduct that informs the judgment of the Court in its decision to reject the plea agreement.[6]

10. The Government justifies the allowance of these deductions by arguing that, in criminal tax prosecutions, as a matter of policy, it does not criminally prosecute taxpayers for taking deductions about which there might be a legitimate dispute, and that the deductions at issue in this case fit that description. While it is not entirely clear what the effect of allowing the questionable deductions is in the calculation of the total offense level, even under the Government's version, at the very least, the plea agreement will affect the maximum sentence that the Court could impose on the defendant. *See* Government's Submission Regarding Rule 11(e)(1)(C) Plea (docket no. 34), at 2 ("The government notes that even if the Court disagrees with the parties' view of the tax loss, the effect of accepting the agreement will be to deprive the Court of the possibility of imposing a maximum sentence of 10 months imprisonment and limit it to a maximum of 8 months imprisonment.").

11. This is important because, in calculating the defendant's total offense level in this case, the United States Probation Office would not be bound by the Government's own prosecutorial policy. Rather, under the "relevant conduct" standard set forth in § 1B1.3 of the Guidelines, the defendant can be held accountable for improper deductions even if the Government chose not to criminally prosecute him for them. "The principles and limits of sentencing accountability under this guideline are not always the same as the principles and limits of criminal liability. Under subsections (a)(1) and (a)(2), the focus is on the specific acts and omissions for which the defendant is to be held accountable in determining the applicable guideline range, rather than on whether the defendant is criminally liable for an offense as a principal, accomplice, or conspirator." *See* U.S.S.G. § 1B1.3, Application Note 1.

12. Thus, since the plea agreement entered into by the Government and the defendant in this case would limit the Court's discretion to a level below that which could result from a calculation of the total offense level under the "relevant conduct" standard of Section 1B1.3, the Court will **REJECT** the plea agreement.[7]

AND IT IS SO ORDERED.[8]

### *ORDER–MEMORANDUM ON RECONSIDERATION*

AND NOW, this 20th day of November, 1995, upon consideration of the November 13, 1995 letter to the Court from Michael L. Levy, First Assistant United States Attorney, which will be filed of record, and which the Court shall deem a motion for reconsid-

---

6. The Government contends that the "relevant conduct" used to calculate the defendant's total offense level, as reflected in the plea agreement, is broader than the "criminal liability" that was charged in the indictment. The criminal conduct charged in the indictment is based on IRS audits of the defendant's corporate tax returns for the 1989–91 fiscal years, as well as his personal tax returns for 1989 and 1990. In calculating the amount of tax loss caused by the defendant's alleged fraud for the purpose of sentencing, however, the Government used IRS audits of the defendant corporate tax returns for the 1989–91 fiscal years, as well as IRS audits of the defendant's personal tax returns for the years 1988, 1989, 1990, and 1991. *See* Transcript of October 13, 1995 Change of Plea Hearing (docket no. 32), at 10–11. In other words, according to the Government, whatever under-counting may result from the allowed disputed deductions is offset by the Government's inclusion in the calculation of tax years for a period of time not charged in the indictment. The Court disagrees.

The inclusion of extra-indictment tax years as part of the relevant conduct used to calculate the defendant's total offense level does not excuse the failure to include certain personal deductions which are also part and parcel of the defendant's relevant conduct.

7. Since the October 13, 1995 change of plea hearing was continued before the defendant actually entered a guilty plea, there is no plea to withdraw, and the case shall proceed to trial on December 6, 1995, unless the Government and defendant decide to enter into a plea agreement pursuant to Fed.R.Crim.P. 11(e)(1)(B).

8. While the Court inquired at the October 13, 1995 change-of-plea hearing whether the Government had based its decision to enter into this plea upon considerations of the defendant's socio-economic status, the Court is satisfied that the Government did not do so, and, therefore, such concerns do not animate the Court's calculus of decision-making in this case.

eration, it is hereby **ORDERED** that the motion is **DENIED** for the following reasons:

1. On November 13, 1995, the Court entered an Order–Memorandum (docket no. 37) rejecting the plea agreement between the Government and the defendant in this case. In paragraph 9 of the Order–Memorandum, the Court stated the following:

> The Government calculates that the loss caused by the defendant's alleged tax fraud is $39,644.22. In reaching this total, contrary to the IRS's determination, the Government agreed that certain personal expenses such as carpeting, windows, and aluminum siding for the defendant's home, which he charged off to his corporation, were ordinary and necessary business expenses. *See* Government's Change of Plea Memorandum, at 5 n. 4. The Government also agreed that the defendant could take certain travel and entertainment deductions that the IRS had not allowed. *See* Government's Change of Plea Memorandum, at 7 n. 5. It is the Government's failure to include the disputed personal expense deductions in its calculation of the loss caused by the defendant's conduct that informs the judgment of the Court in its decision to reject the plea agreement.

2. In its motion for reconsideration, the Government contends that the Court should withdraw the order-memorandum because "it conveys an impression that [Mr. Levy] was derelict in his duties." *See* Letter from Michael L. Levy to The Honorable Eduardo C. Robreno dated November 13, 1995, at 1. Mr. Levy contends that through his "failure to explain the Government's position" the Court has misunderstood that position with regard to the deductions. *Id.*

3. Mr. Levy then explains that the defendant's payments to John Irwin, Sentry Property Management and to Des–Carr Overhead Doors, which were referred to in ¶ 9 of the November 13 Order–Memorandum, were for the rental of a storage garage and the placement of a new door on the garage. The Government contends that the defendant stored both personal and business items in the garage, and thus that the garage had a mixed business and personal use. This caused the Government to decide not to con-

test the deductibility of the expenses in a criminal tax case. *Id.* at 1–2.

4. According to the Government, the defendant also paid for part of an Ingersoll–Rand employee's vacation, and purchased meals for other Ingersoll–Rand employees.[1] The Government contends that since these expenditures could be considered legitimate travel and entertainment expenses, it agreed not to contest the deductions in a criminal tax case. *Id.* at 2.

 5. It is axiomatic that the Court cannot consider information that the Government does not present to it. The information contained in Mr. Levy's letter was not provided to the Court at the October 13, 1995 plea hearing. Nor was it provided in the Government's plea memorandum. Even if the information had been made available on a timely basis, however, the Court would not have reached a different decision. The new information does not change the Court's conclusion that the proposed plea agreement would, at a minimum, impermissibly limit the Court's discretion by reducing the maximum sentence that the Court could impose on the defendant. *See* Government's Submission Regarding Rule 11(e)(1)(C) Plea (docket no. 34), at 2 ("The government notes that even if the Court disagrees with the parties' view of the tax loss, the effect of accepting the agreement will be to deprive the Court of the possibility of imposing a maximum sentence of 10 months imprisonment and limit it to a maximum of 8 months imprisonment.").

6. It was because the plea agreement entered into by the Government and the defendant in this case would have limited the Court's discretion to a level below that which could result from a calculation of the total offense level under the "relevant conduct" standard of Section 1B1.3, that the Court rejected the plea agreement. Since the new facts offered by the Government would not change this result, the Government's motion for reconsideration is **DENIED.**

AND IT IS SO ORDERED.

---

**1.** Ingersoll–Rand is a company that does business with the defendant's company.