Percy William FIELDS, Petitioner–
Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 91–3939.

United States Court of Appeals,
Sixth Circuit.

Submitted April 10, 1992.

Decided April 22, 1992.

Percy William Fields (briefed), Milan, Mich., for petitioner-appellant.

Marilyn A. Bobula, Asst. U.S. Atty. (briefed), Cleveland, Ohio, for respondent-appellee.

Before NORRIS and SUHRHEINRICH, Circuit Judges; and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Petitioner, Percy William Fields, appeals the denial of a motion to vacate his sentence, brought pursuant to 28 U.S.C. § 2255, which followed his guilty plea and conviction for carrying a firearm during a drug trafficking crime, in violation of 18 U.S.C. § 924(c) and possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1).

I.

On September 9, 1988, detectives of the Cleveland Police Department observed the petitioner, Percy William Fields, attempting to sell drugs. When Fields saw the officers coming toward him, he fled and the officers gave chase. While fleeing, Fields attempted to dispose of two firearms which he was carrying on his person. Joint Appendix at 140–42. He was eventually apprehended, and at the time of his arrest the officers' search of Fields revealed two packets of heroine and two packets of cocaine. The officers, who recovered the discarded weapons, also found a third firearm during their search of Fields. In total, Fields had been carrying a loaded RG10, .22 caliber revolver; a Smith & Wesson, .32–20 caliber revolver; and a Dan Wesson, .357 caliber revolver. *Id.*

On September 12, 1988, a federal arrest warrant was issued for Fields, and special agents of the Bureau of Alcohol, Tobacco & Firearms executed the warrant at a hospital where Fields was visiting his wife.

At the time of his arrest, Fields attempted to pass eight packets of cocaine to his wife.

As a result of the events of September 9 and 12, 1988 a federal grand jury returned a four-count indictment on October 4, 1988, charging Fields, in Count I, with being a felon in possession of a firearm, 18 U.S.C. § 922(g)(1); in Count II with possession with intent to distribute heroine and cocaine, 21 U.S.C. § 841(a)(1); in Count III with carrying a firearm during a drug trafficking crime, 18 U.S.C. § 924(c); and, in Count IV with possession with intent to distribute cocaine, 21 U.S.C. § 841(a)(1). At the October 19, 1988 arraignment, the court accepted Fields' plea of not guilty, and set the case for trial.

On January 12, 1989, the morning trial was to commence, Fields informed the court that he wished to change his plea from not guilty to guilty to Counts III and IV of the indictment. Fields contends that he was induced to plead guilty by the U.S. Attorney, who informed him that if convicted he would face a potential 35 years in prison because he was a career criminal. Therefore, he argues, he accepted the government's offer of a 15 year sentence on Counts III and IV believing that he would risk the possibility of going to prison for a much longer time.

In any event, a change of plea hearing was held on January 12, 1989. At this hearing, Fields was represented by his retained counsel. The court informed Fields of his constitutional rights and cautioned him that these and other rights would be waived if the court accepted his guilty plea. The court advised Fields that, pursuant to the Sentencing Reform Act of 1984, the judge must follow the United States Sentencing Commission Guidelines in determining the sentence in a criminal case. Fields acknowledged that he had reviewed the Sentencing Guidelines with his counsel. The court then informed Fields of the nature of the charges against him and of the maximum sentence he could receive if the court accepted his guilty plea. Fields stated that no threats or promises had been made to him, and that he voluntarily desired to enter a plea of guilty to the charges against him in Counts III and IV of the indictment.

The court was notified that an oral binding plea agreement had been entered into between Fields and the government pursuant to Fed.R.Crim.P. 11(e)(1)(C). In this agreement, Fields agreed to plead guilty to Counts III and IV in exchange for the government's agreement to dismiss Counts I and II. In addition, the government agreed to recommend five years incarceration on Count III and ten years incarceration on Count IV, to run consecutively.

The government then presented a factual basis for the guilty plea. Fields stated that the facts as presented were true, that no contrary evidence would be presented at trial, and that he was in fact guilty of Counts III and IV of the indictment. After determining that the factual basis was sufficient to support a conviction and that the plea was knowingly and voluntarily made, the court accepted the plea agreement. The court then stated: "I will accept the plea agreement with 15 years and I will not change it. I'm not going to wait for the pre-sentence report to commit to that situation." Joint Appendix at 163. The court, nevertheless, continued the matter for sentencing pending preparation and receipt of the presentence report.

In the interim, the presentence report was prepared, and it revealed that Fields could not be classified as a career offender under the guidelines. Although Fields had a significant number of prior convictions, they would not count toward his criminal history score because many of them occurred too long ago. Thus, in fact, Fields was not subject to the 15 year sentence recommended in the plea agreement. The government, therefore, did not move to enforce the 15 year sentence required by the plea agreement.

At the sentencing hearing on May 4, 1989, Fields and his counsel were given an opportunity to review the presentence report and the new calculations. The court, recognizing that there had been an error in calculating the 15 year sentence to which Fields agreed, gave Fields the opportunity to withdraw his plea. However, Fields'

attorney stated that he "no longer wishes to withdraw his plea but will accept the sentence the court has indicated." Joint Appendix at 171. This modified sentence was five years on each count, to run consecutively, for a total of ten years.

Fields agreed that the presentence report was accurate, and also agreed that he was satisfied with his attorney's representation. The court then provided Fields' counsel the opportunity to make a statement in his client's behalf and to present any information in mitigation of punishment.

The government then presented to the court its basis for determining that a 10 year sentence would be appropriate. On Count III, the presentence report recommended a base offense level of 14 (12 for the underlying offense and 2 additional points for obstruction of justice) and a criminal history category of III. Count IV carried a mandatory five year term. The government argued, however, that the court should make an upward departure on Count III from a base offense level of 14 to a level 17, and from a criminal history category of III to a category VI. This would thus result in a five year term on Count III, and when combined with Count IV, would yield a ten year total.

Apparently, the government based its argument to increase the offense level from 14 to 17 on a three point increase for obstruction of justice. The base level of 14, recommended in the presentence report, included 2 points for obstruction, but the government argued that "the fleeing and the reaching for the gun while [Fields] was being chased by the police is more obstruction than just two points." Joint Appendix at 179. In addition, the government cited Fields' attempt to "pass the eight packets of cocaine to his wife to conceal the cocaine ... at the time of that arrest" to provide an additional source of obstruction points. The government concluded that "the plus two is inadequate for computing ... the offense level, and probably plus five would be more appropriate to a level 17." *Id.*

To support its enhancement of the criminal history category from a level III to a level VI, the government cited U.S.S.G. § 4A1.3, arguing that other factors must be taken into account to adequately reflect the seriousness of Fields' past criminal conduct. This included, *inter alia,* the likelihood of recidivism, history of drug abuse, the fact that he committed the instant offenses while out on bond on a state court indictment for drug law violations, the fact that he committed the offenses charged in Count IV three days after he was released after arrest for the charges comprising Counts I, II and III, and his history of violent crime.

The court agreed with the government, holding: "there is an extensive drug record, there's violence, and therefore this court is making the determination that this defendant will be in a criminal history category six and an offense level of 17," resulting in a ten year sentence. Joint Appendix at 181–82. The court supported its enhancement by citing Fields' convictions for numerous violent and drug-related offenses "even though they were a long time ago." *Id.* at 181.

Counsel for the government, pursuant to the Rule 11 agreement, moved to dismiss Counts I and II of the indictment. The court granted the government's motion.

On September 9, 1990 Fields filed a motion under 28 U.S.C. § 2255 to vacate, set-aside or correct his sentence. On August 20, 1991 the district court entered its Memorandum of Opinion and Order of Dismissal denying Fields' § 2255 motion. On September 30, 1991, Fields filed his notice of appeal from the district court's order.

## II.

Fields first argues that the district court did not comply with Fed.R.Crim.P. 11 when taking his guilty plea. Fields appears to argue that, once the district court unqualifiedly agreed to accept the initial guilty plea, he was bound by that bargain. Fields cites *United States v. Holman,* 728 F.2d 809 (6th Cir.), *cert. denied,* 469 U.S. 983, 105 S.Ct. 388, 83 L.Ed.2d 323 (1984) for the proposition that the district court is forever bound by such an unqualified acceptance, even if the presentence report

subsequently reveals errors in the calculation of the sentence. Fields argues that, because the district court later rejected the plea, he should be given the opportunity to withdraw his plea and plead anew. This argument is flawed for the following reasons.

In *United States v. Kemper*, 908 F.2d 33 (6th Cir.1990) this court recognized that *Holman*, which was decided before the Sentencing Guidelines, had been overruled by "the 1987 amendments to the Federal Rules of Criminal Procedure and the implementation of the ... Guidelines." *Id.* at 35. A sentencing judge could no longer be forced to abide by an agreed to sentence where that sentence did not conform to the Guidelines, as that would eviscerate their purpose.

The *Kemper* court explained that if a plea agreement has been accepted by the court before the presentence report has been conducted, Guideline § 6B1.1(c) describes the proper procedure:

> The court shall defer its decision to accept or reject any nonbinding recommendation pursuant to Rule 11(c)(1)(B) and the court's decision to accept or reject any plea agreement pursuant to Rules 11(e)(1)(A) and 11(e)(1)(C) until there has been an opportunity to consider the presentence report.

*Kemper*, 908 F.2d at 36. The commentary to Guideline § 6B1.1 explains the timing of the court's decision whether to accept the plea agreement.

> Rule 11(e)(2) gives the court discretion to accept the plea agreement immediately or defer acceptance pending consideration of the presentence report. Prior to the guidelines, an immediate decision was permissible because, under Rule 32(c), Fed.R.Crim.P., the defendant could waive preparation of the presentence report. Section 6B1.1(c) reflects the changes in practice required by § 6A1.1 and amended Rule 32(c)(1). Since a presentence report normally will be prepared, *the court must defer acceptance of the plea agreement until the court has had an opportunity to consider the presentence report* (emphasis added).

*Id.* Thus, like in *Kemper*, "although the court stated that it was [unconditionally] accepting the plea agreement before the presentence report had been made, this acceptance was contingent upon the court's consideration of the presentence report." *Id.* In the present case, the district court agreed to accept the Rule 11(e)(1)(C) plea irrespective of the presentence report, concluding that as a career offender, Fields would be subject to a 15 year sentence. However, the presentence report indicated that Fields would not qualify as a career offender and thus, a 15 year sentence would not be within the applicable guideline range. In this case, Guideline § 6B1.1 as interpreted by *Kemper*, makes clear that the district court's acceptance was contingent upon its review of the presentence report. For, "only if the court is satisfied ... that the contemplated sentence is within the guidelines" can it accept an agreement requiring imposition of a specific sentence. *Kemper*, 908 F.2d at 36–37. This did not occur until the district court reviewed the presentence report.

Upon review of the presentence report, if the sentencing court determines that there was an error in calculating the agreed-upon sentence, it must reject the plea. *Id.;* U.S.S.G. § 6B1.3. The court must then "afford the defendant an opportunity to withdraw the defendant's guilty plea." U.S.S.G. § 6B1.3. In this case, the transcript of the sentencing hearing clearly shows that Fields was given the opportunity to withdraw his plea, but he chose not to do so. The Federal Rules of Criminal Procedure and the Sentencing Guidelines demand no more of the judge, nor provide Fields with any other form of relief.[1]

## III.

Fields next challenges the district court's calculation of his sentence under the Sentencing Guidelines. The government re-

---

**1.** Although *Kemper* was decided after the sentence was imposed in this case, its logic is inescapable—namely, that the Sentencing Guide-lines, and not the *Kemper* case itself, overruled *Holman*. Thus, its logic is applicable here.

sponds that we need not address this issue because Fields failed to raise it below in his section 2255 motion. A review of the record reveals, however, that Fields filed an amendment to his motion to vacate sentence, wherein he specifically raised the issue of the misapplication of the Sentencing Guidelines. Therefore, we hold that a review of the district court's application of the Guidelines is appropriate.

Fields first argues that the district court erred in increasing his base offense level by five points because of obstruction of justice. Fields cites "U.S.S.G. § 3C1.2 Application Note 1" which, he argues "instructs that this level increase should not be used in connection with the increase provided for an obstruction solely on the basis of the same conduct." Although the precise contours of Fields' argument is unclear, we need not decipher this challenge because it is based on Guideline § 3C1.2, which was not in effect at the time of sentencing, and thus is not applicable. Guideline § 3C1.2 became effective on November 1, 1990, while Fields' sentencing hearing took place on May 4, 1989.

■■■ Nevertheless, a pro se petitioner's section 2255 motion is entitled to a generous construction, *Franklin v. Rose*, 765 F.2d 82, 84–85 (6th Cir.1985) (per curiam), and therefore, we will address those guidelines questions pertaining to obstruction of justice which present potential problems. This task is made more difficult because the district court did not clearly specify, on the record, the reasons for its three-level increase. The presentence report recommended a base offense level of 12 plus two additional points for obstruction of justice, yielding a base level of 14. The government thought that Fields' actions, however, justified a much higher increase for obstruction, to an offense level of 17. The government based this on: (1) Fields' attempt to avoid arrest on September 9, 1988 by fleeing; (2) his attempt to conceal two firearms by dropping them while fleeing; and (3) by passing eight packets of cocaine to his wife upon his arrest on September 12, 1988. Assigning two obstruction points to each of these acts, the government con-

cluded that at least a "plus five would probably be more appropriate." Joint Appendix at 179.

Without stating its reasons for the five level increase, the district court set the base offense level at 17. Apparently, the district court agreed with the reasons proposed by the government and simply adopted that rationale. The court's lack of an on the record explanation caused the Assistant U.S. Attorney some concern, who stated "You didn't detail why you went to the offense level, but I think your comments following the arguments are probably sufficient." *Id.* at 182. We find that the government's concern was justified, as the district court's decision was not adequately supported by specific reasons for the increase.

The Sentencing Reform Act of 1984, codified in part at 18 U.S.C. § 3553(c) states:

> The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and if the sentence—
>
> (1) is of the kind, and within the range described in subsection (a)(4), the reason for imposing a sentence at a particular point within the range; or
>
> (2) is not of the kind, or is outside the range described in subsection (a)(4), the specific reason for the imposition of a sentence different from that described.

18 U.S.C. § 3553(c)(1), (2). We find that the district court has not met this standard. In the instant case, the court did not articulate its "reason for imposing a sentence at a particular point." Therefore, we remand this matter to the district court for it to clarify its rationale in setting the base offense level at 17. In addition, we recommend that the district court reconsider whether it should impose more than two obstruction of justice points in any one case. We have been unable to find any authority to support the aggregation of obstruction points simply because the defendant committed more than one act of obstruction in a single case. *See, e.g.,* *United States v. Velasquez–Mercado,* 872 F.2d 632 (5th Cir.) (3 separate incidents,

each of which could be considered obstruction, netted only one 2–point increase), *cert. denied,* 493 U.S. 866, 110 S.Ct. 187, 107 L.Ed.2d 142 (1989).

Secondly, Fields challenges the district court's upward departure from a criminal history category of III to category VI. He contends that "under § 4A1.1(c) of the Sentencing Guidelines, a sentence of probation is assigned 1 point with respect to the computation of the criminal history category of IV as opposed to category VI." Petitioner's Brief at 9–10. Fields' argument, however, misapprehends the basis for the departure used by the district court. The court relied on U.S.S.G. § 4A1.3 "Adequacy of Criminal History Category" and not U.S.S.G. § 4A1.1. Joint Appendix at 180. Section 4A1.3 allows the court to depart upward if it finds that the defendant's "criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes." U.S.S.G. § 4A1.3. The district court invoked the proper Guidelines section for making an upward departure in petitioner's criminal history category, and therefore, we find that Fields' argument is without merit.

### IV.

Fields cites to numerous other problems which he claims tainted the proceeding below. These include claims: (1) that he was mentally incompetent at his plea hearing; (2) that he was denied the effective assistance of counsel; (3) that his guilty plea was involuntary; and (4) that he was coerced into accepting the guilty plea. However, Fields was represented by retained counsel of his choosing, the district court scrupulously followed the requirements of Rule 11 in taking his guilty plea, Fields clearly understood what he was doing and thus made his choices voluntarily, and there is no evidence that he was mentally incompetent to participate in the hearing. We, therefore, reject each of these arguments without further discussion.

### V.

For the foregoing reasons, the district court's decision is hereby AFFIRMED in part, REVERSED in part and remanded for additional proceedings consistent with this opinion.