**UNITED STATES of America**

v.

**Adetayo AJAYI.**

**CR No. 95–093–T.**

United States District Court,
D. Rhode Island.

July 3, 1996.

As Corrected July 8, 1996.

Andrew Reich, Assistant U.S. Attorney, U.S. Attorney's Office, Providence, RI, for Plaintiff.

Donna A. Uhlmann, Providence, RI, for Defendant.

---

### MEMORANDUM AND ORDER

TORRES, District Judge.

On November 8, 1995, a Federal grand jury returned a two-count indictment against Adetayo Ajayi for making false statements in connection with passport applications in violation of 18 U.S.C. § 1542 (1996). Count I charges that on March 29, 1995, Ajayi made a false statement in seeking a passport for his *own* use. Count II charges that on April 18, 1995, he made a false statement in an application seeking a passport for *another* person.

On January 4, 1996, Ajayi proffered a plea of guilty to the charge contained in Count I. The plea was tendered pursuant to a plea agreement under which the government promised to recommend a sentence at the low end of the applicable Guideline range and move for dismissal of Count II. The plea agreement specifically notes that those recommendations are not binding on the Court and that Ajayi has no right to withdraw his plea if the Court does not accept them.

During the plea colloquy, the Court confirmed that Ajayi understood that the government's recommendations were not binding on the Court. In addition, Ajayi was informed that the determination as to whether Count II should be dismissed would be based upon the facts contained in the presentence report (the "PSR"). The exact dialogue was:

> Q. Do you understand, Mr. Ajayi, that the Court is not bound by that agreement; in other words, the Court does not have to accept any recommendations that the government may make pursuant to the agreement about what sentence you receive or whether Count II should be dismissed. Do you understand that?
>
> A. Yes, sir.
>
> Q. Do you understand the Court makes an independent decision and bases that decision on the facts as revealed in the presentence report?
>
> A. Yes.

(1/4/96, Tr. at 12–13).

After finding that Ajayi's decision was both knowing and voluntary and that all of the requirements of Fed.R.Crim.P. 11 had been satisfied, the Court "accepted" the plea of guilty to Count I and scheduled the matter for sentencing on March 21, 1996.

Prior to the scheduled sentencing date, the Court received the PSR which contained a number of significant facts not previously disclosed. The PSR revealed that the "other person" that Ajayi allegedly assisted in fraudulently obtaining a passport was Ajayi's girlfriend and that she later pled guilty to four counts of negotiating fraudulent checks through the use of false identifications. Furthermore, the PSR disclosed that, after learning that his girlfriend had testified before the grand jury that indicted him, Ajayi assaulted and threatened her. The PSR also showed that a search of Ajayi's apartment uncovered a variety of drivers' licenses, birth certificates and Social Security cards in the names of other persons as well as unnegotiated checks payable to thirteen different people. One of the drivers' licenses was a New Hampshire license in the name of Stanley Thornton that bore Ajayi's photograph. Ajayi has not disputed the accuracy of the information contained in the PSR.

In addition, the PSR revealed that any sentence imposed for the offense charged in Count II likely would be considerably greater than any sentence imposed for the offense charged in Count I because different provisions of the United States Sentencing Guidelines (the "Guidelines") apply to each count. Count II is governed by § 2L2.1 which establishes a higher base offense level to reflect the fact that trafficking in fraudulently obtained passports is more serious than fraudulently obtaining passports for one's own use. U.S.S.G. § 2L2.1 (Nov. 1995).

Moreover, § 2L2.1 permits the documents seized during the search of Ajayi's apartment to be taken into account as specific offense characteristics and as relevant conduct. In contrast, that information is excluded from consideration by § 2L2.2 which governs Count I.[1] U.S.S.G. § 2L2.2 (Nov. 1995). As a result, the sentencing range applicable to Count I would be somewhere in the vicinity of 6 to 12 months, whereas the range applicable to Count II would be approximately 30 to 37 months.

After reviewing the PSR, the Court expressed concern about the portion of the plea agreement dealing with the dismissal of Count II. The Court's purpose in raising the issue at that time was to avoid the unfair surprise that would result if the motion to dismiss Count II was denied after the defendant was sentenced on Count I. The Court made it clear that it would not be inclined to grant any motion to dismiss Count II unless counsel could present reasons justifying such action. Accordingly, the matter was rescheduled to May 24, 1996, and counsel were afforded an opportunity to file memoranda. Counsel also were advised by letter that, if the Court determined that Count II should not be dismissed, Ajayi should be prepared to inform the Court whether he wished to withdraw his guilty plea to Count I.

On May 24, the Court decided that Count II should not be dismissed and that the defendant should be permitted to withdraw his guilty plea to Count I.[2] On June 24, 1996, Ajayi declined the opportunity to withdraw his plea and the case was scheduled for trial.

Both parties objected to the Court's decision to reject the plea agreement. The Government's objection appears to be two-fold. First, it argues that "acceptance" of the plea to Count I precludes the Court from rejecting the plea agreement and that, in any event, the Court erred in determining that Count II should not be dismissed. Second, it contends that the refusal to dismiss Count II is not a basis for rejecting the plea agreement because the agreement requires only that the Government *request* dismissal of Count II and makes it clear that the Court is not obliged to accede to that request. The defendant's objection is more difficult to decipher but also seems to be based on the Court's refusal to dismiss Count II.

Because both parties challenge the decision not to dismiss Count II and because that decision is likely to be the subject of an interlocutory appeal, the Court has vacated the trial date and is writing this Memorandum and Order in the hope that it will present a more complete record for consideration by the Court of Appeals.

### *Discussion*

#### I. *Authority to Reject Plea Agreement*

 The contention that, because the Court accepted Ajayi's guilty plea to Count I, it lacks authority to reject the plea agreement, overlooks the distinction between the *plea* of guilty and a plea *agreement*. Obviously, there is a close relationship between a guilty plea and a plea agreement pursuant to which the plea is entered. However, the two are not synonymous. *United States v. Ewing,* 957 F.2d 115, 118 (4th Cir.), *cert. denied,* 505 U.S. 1210, 112 S.Ct. 3008, 120 L.Ed.2d 882 (1992) (recognizing distinction between a plea of guilty and a plea agreement).

Rule 11, itself, recognizes that a plea and a plea agreement are not one and the same. Most of the provisions of Rule 11 deal with pleas and the requirements that must be satisfied before they can be accepted. However, Rule 11(e) deals specifically with plea agreements. The rule identifies two types of plea agreements:

1. agreements in which the government promises to recommend "a particular sentence, with the understanding that such recommendation or request shall not be

---

1. Section 1B1.3(a)(2) provides that, with respect to offenses that may be "grouped" pursuant to § 3D1.2(d), acts that "were part of the same course of conduct or a common scheme" may be taken into account as relevant conduct. Section 3D1.2(d) allows offenses covered by § 2L2.1 to be grouped but not offenses covered by § 2L2.2.

2. Initially, the Court, assuming that Ajayi wanted to withdraw his plea, declared that the plea would be vacated. Later, however, the Court made it clear that it merely was affording Ajayi the opportunity to withdraw his plea.

binding upon the Court" Rule 11(e)(1)(B); and

2. agreements in which the government either promises to "move for dismissal of other charges" to which the defendant is not pleading; Rule 11(e)(1)(A); or agrees "that a specific sentence is the appropriate disposition of the case." Rule 11(e)(1)(C).

The distinction between pleas and plea agreements is most apparent in the case where agreements of the second type are involved. In such cases, Rule 11(e)(2) provides that:

> the Court may accept or reject the *agreement,* or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report.

Fed.R.Crim.P. 11(e)(2) (emphasis added).

There is nothing in Rule 11 that prevents a Court from deferring decision regarding a plea *agreement* merely because a guilty *plea* was "accepted" with respect to one of the offenses charged. On the contrary, Rule 11(e)(4) clearly contemplates that possibility by requiring that a defendant be afforded the opportunity to "withdraw" his plea if the Court rejects the plea agreement. Obviously, there would be no occasion to withdraw a plea upon rejection of a plea agreement unless there was a distinction between a plea and a plea agreement and unless a plea previously had been accepted.

At least two circuits have recognized the permissibility of accepting a guilty plea to some charges and deferring decision with respect to a plea agreement containing a promise to move for dismissal of other charges. *United States v. Cordova–Perez,* 65 F.3d 1552 (9th Cir.1995), *petition for cert. filed,* (May 22, 1996) (No. 95–9101); *Ewing,* 957 F.2d at 118 (upholding later rejection of the plea agreement based on information contained in the PSR). In such cases, acceptance of the plea bargain has been deemed to be "impliedly" contingent upon the Court's review of the PSR even in the absence of any statement to that effect. *Cordova–Perez,* 65 F.3d at 1555–56.

Here, there is no need to "imply" any such condition because, as already noted, the Court *expressly* reserved decision regarding the dismissal of Count II until it had an opportunity to review the PSR. Moreover, when the plea agreement was rejected, Ajayi was afforded an opportunity to withdraw his plea in accordance with the provisions of Rule 11(e)(4).

## II. *Sufficiency of Grounds for Rejection of Plea Agreement*

■ Having determined that this Court has authority to reject the plea agreement, the next issue to be addressed is whether that authority was properly exercised. The government contends that in making that determination, the proper standard is the one applicable to Rule 48(a) which governs dismissals.

■ Rule 48(a) provides that "the United States Attorney may by leave of Court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate." Although Rule 48(a) does not reduce the Court to the role of a rubber stamp, approval of such motions should not be withheld unless dismissal would contravene a manifest public interest. *Rinaldi v. United States,* 434 U.S. 22, 29 n. 15, 98 S.Ct. 81, 85 n. 15, 54 L.Ed.2d 207 (1977); *United States v. Carrigan,* 778 F.2d 1454, 1463 (10th Cir.1985).

■ In this case, Rule 48(a) is not applicable because the government has not yet filed any motion to dismiss. In fact, the plea agreement provides that the government's obligation to seek dismissal does not ripen until the "time of sentencing on the charges contained in Count I." (Plea Agr. ¶ 2.a). The apparent reason for that provision is the government's understandable reluctance to have Count II dismissed unless and until there is a disposition of the charges contained in Count I. Consequently, the issue presented is whether the plea agreement and, more particularly, the provision requiring the government to seek dismissal of Count II, should be accepted.

■ The determination as to whether a plea agreement should be accepted or rejected is governed by Rule 11. The rule does not establish any specific criteria for making

that determination. Rather, it commits the decision to the discretion of the trial judge. *United States v. Foy,* 28 F.3d 464, 472 (5th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 610, 130 L.Ed.2d 520 (1994). "Undue leniency" is one ground for rejecting a plea agreement. *Id.*

The Guidelines address the subject with more specificity. Section 6B1.2(a) states that, when a plea agreement provides for the dismissal of other charges or an agreement not to pursue other potential charges, acceptance is contingent upon a showing "that the remaining charges adequately reflect the seriousness of the actual offense behavior and that accepting the agreement will not undermine the statutory purposes of sentencing or the sentencing Guidelines." U.S.S.G. § 6B1.2(a) (Nov. 1995). Thus, it has been held that acceptance of a guilty plea does not require the trial judge to later accept the terms of the plea agreement where the proposed disposition would eviscerate the purpose of the Guidelines. *Fields v. United States,* 963 F.2d 105, 108 (6th Cir.1992).

In this case, the offense of making a false statement in an application for a passport for the use of *another* is inherently more serious than the offense of making a false statement in an application for a passport for one's *own* use as evidenced by the fact that the Guidelines establish a higher base offense level for Count II. Moreover, the disparity is compounded by the fact that the Guidelines applicable to Count II provide further enhancements based upon related offense conduct that is excluded from consideration by the Guidelines applicable to Count I. As already noted, dismissing Count II probably would result in a sentencing range of approximately 6 to 12 months rather than the range of 30 to 37 months that likely would apply if Count II is not dismissed. Thus, dismissing Count II would both understate the "seriousness of the actual offense behavior" and "undermine the sentencing Guidelines."

■ Under these circumstances, dismissal of Count II also would satisfy even the contravention of a manifest public interest standard applicable to Rule 48(a). The dual purpose of requiring Court approval of Rule 48(a) motions is to prevent unfairness to the defendant and to protect the public interest. *United States v. Strayer,* 846 F.2d 1262, 1265 (10th Cir.1988) (citing *Carrigan,* 778 F.2d at 1463; *United States v. Gonsalves,* 781 F.2d 1319, 1320 (9th Cir.1986)). Because the U.S. Attorney has considerable discretion in determining whether to prosecute, such motions rarely should be denied on the ground that they are contrary to the public interest. *Rinaldi,* 434 U.S. at 29 n. 15, 98 S.Ct. at 85 n. 15.

However, this case presents one of those rare situations. The PSR provides ample reason to believe that the defendant committed both of the offenses charged and that he has engaged in related conduct that would appreciably increase his sentence if Count II is not dismissed. Furthermore, the government has not presented any satisfactory reason for dismissing Count II or imposing a lesser sentence for the offense conduct in question. There is no indication that the government lacks sufficient evidence to convict or that there are any mitigating factors that would justify overlooking the offense charged in Count II.

In short, the proposed dismissal of Count II amounts to nothing more than a limitation on the Court's power to impose an appropriate sentence in accordance with benchmarks established by the Guidelines. It would allow the government to invade the province of the Court by selectively choosing those offenses for which the defendant will be sentenced, thereby dictating a defendant's sentencing range. Such a usurpation of the Court's sentencing authority, in itself, contravenes a manifest public interest. Here, the effect is magnified by the fact that it would produce a sentence that is grossly disproportionate to the offense in question and radically different from the sentences customarily imposed on individuals engaging in similar conduct.

III. *Significance of the Non-binding Nature of the Plea Agreement*

■ The government suggests that, because the plea agreement only requires it to "*seek* leave of the Court to dismiss Count II" (Plea Agr. ¶ 2.a) (emphasis added), the deter-

mination that dismissal is inappropriate is not a basis for rejecting the agreement. That contention might have some merit if Ajayi's election not to withdraw his plea to Count I is construed as a decision to be bound by the remaining terms of the agreement. Rule 11(e)(4) merely requires the Court to inform the parties that it rejects the plea agreement and to "afford the defendant the *opportunity* to then withdraw the plea." The rule does not mandate that the plea be vacated. Nor does it prevent the parties from agreeing to be bound by any terms that were not rejected.

However, in this case, Ajayi's election should not be construed as an agreement to be bound to only the remaining terms of the plea agreement. Ajayi clearly expressed the desire that all of the terms of the plea agreement be honored including the recommendation that Count II be dismissed. Thus, despite the fact that he made the election after being informed that Count II would not be dismissed, the election does not signify consent to be bound by the remaining terms of the plea agreement. Under these circumstances, fairness dictates that Ajayi be given a chance to repudiate the agreement after exhausting his challenge to the Court's decision not to dismiss Count II.

IV. *Applicability of United States v. Cruz*

Although not cited by either of the parties, consideration must be given to the opinion in *United States v. Cruz*, 709 F.2d 111 (1st Cir.1983). In *Cruz*, the First Circuit held that a District Judge may not "unqualifiedly" accept both a bargained-for plea and the underlying plea agreement and later reject the plea agreement over the defendant's objection on the basis of information contained in the PSR unless that information reveals a fraud on the Court. *Cruz*, 709 F.2d at 114–15. Because *Cruz* is readily distinguishable from this case and because its authority has been eroded both by the intervening adoption of the Guidelines and by subsequent decisions overruling it to the extent it rests on double jeopardy considerations, there is no need to determine whether the fact that the information in the PSR was not disclosed

previously is the equivalent of a fraud on the Court.

In *Cruz*, the defendant was indicted for the felony of possessing cocaine with intent to distribute it, but pled guilty to a subsequent information charging simple possession, a misdemeanor. The plea was entered pursuant to a plea agreement calling for the government to recommend a sentence of probation for the offense charged in the information.[3] The District Judge accepted Cruz's plea but said nothing about the plea agreement. The Court of Appeals inferred that the plea agreement had been accepted and concluded that the later rejection of the plea agreement violated the protection afforded by Rules 11 and 32 as well as the Constitutional prohibition against double jeopardy. *Id.*

A. *Rule 11*

*Cruz's* finding that Rule 11 had been violated was based on the District Judge's silence with respect to the plea agreement which *Cruz* held to mean that the District Judge "unqualifiedly accepted the plea bargain" and did not defer his decision. *Id.* at 112. That holding has been eroded by the intervening adoption of § 6B1.1(c) which requires a District Judge to defer a decision with respect to a plea agreement that provides for the dismissal of some charges until after review of the PSR. U.S.S.G. § 6B1.1(c) (Nov. 1995); *Cordova–Perez*, 65 F.3d at 1556; *Foy*, 28 F.3d at 471 (although R. 11(e)(2) permits the Court to defer a decision regarding acceptance of the plea agreement, § 6B1.1(c) requires the Court to defer acceptance until it has had an opportunity to consider the PSR); *Fields*, 963 F.2d at 108 (since the enactment of § 6B1.1(c) acceptance of a plea agreement is necessarily contingent on review of the PSR).

In any event, in this case there is no basis for any inference that the Court "unqualifiedly accepted the plea bargain." The Court unequivocally stated that it was deferring a decision regarding the plea agreement's recommended dismissal of Count II until after it examined the PSR.

---

**3.** There is no indication in *Cruz* that the agree- ment provided for dismissal of the indictment.

## B. *Rule 32*

Another factor underlying the Court's decision in *Cruz* was the finding that the District Judge's reliance on information in the PSR to "justify its *vacation* of the *plea*" "undermined the protection afforded the defendant by [Rule 32]." *Cruz*, 709 F.2d at 115.

■ Rule 32(b)(3) prohibits disclosure of the PSR "unless the defendant has consented in writing, has pleaded guilty or nolo contendere, or has been found guilty." Fed. R.Crim.P. 32(b)(3). The purpose of that provision is to prevent the defendant from being prejudiced by the dissemination of unfavorable hearsay information to the trial judge before the defendant is convicted. *Cordova–Perez*, 65 F.3d at 1555.

In *Cruz*, the Court recognized that the District Judge had fully complied with the literal requirements of Rule 32 by reviewing the PSR only after accepting the guilty plea. Nevertheless, it found that the District Judge deprived Cruz of the protection afforded by the rule by using the information to vacate the previously accepted plea and plea agreement. The Court reasoned that:

> [i]f a court were entitled to use the report to vacate a plea agreement *it had previously accepted*, there would be no reason to obtain the defendant's consent to use the report during its initial consideration of the plea agreement. It could accept the agreement unconditionally, read the presentence report in accordance with Rule 32 and then, on the basis of the report, simply change its mind and revoke its earlier acceptance. This would completely vitiate the protective consent requirements embodied in [Rule 32(c)(1) ].[4]

*Cruz*, 709 F.2d at 115. (emphasis added).

■ In this case, the Court never accepted the plea agreement. It accepted only Ajayi's plea to the charges in Count I and expressly deferred a decision regarding the plea agreement pending review of the PSR. Furthermore, the Court did not *vacate* Ajayi's *plea*. In accordance with Rule 11(b)(4) the Court simply afforded Ajayi an opportunity to withdraw the plea and Ajayi declined. Thus, *Cruz's* concern that a District Court might circumvent Rule 32(b)(3) by accepting a guilty plea, using the plea as a justification for reviewing the PSR and then unilaterally vacating the plea on the basis of information contained in the PSR, is not applicable in this case.

Since Ajayi "pleaded guilty" to Count I, the Court was authorized to examine the PSR. Fed.R.Crim.P. 32(b)(3). Authorization existed even if acceptance of the plea is characterized as merely conditional. *Cordova–Perez*, 65 F.3d at 1555–56; *Fields*, 963 F.2d at 108. As the Ninth Circuit has stated:

> [a] conditional acceptance of a guilty plea satisfies the requirement of Rule 32(b)(3) which provides that the court can review the presentence report after the defendant has pleaded guilty. The possibility that the court might set aside the guilty plea after it has read the presentence report is a risk inherent in the bargain a defendant makes when he agrees to the court's conditional acceptance of his guilty plea.

*Cordova–Perez*, 65 F.3d at 1555–56.

That authorization was not retroactively revoked by later rejection of the plea agreement. As previously stated, Rule 11 contemplates situations like this one in which a plea agreement is rejected after the defendant pleads guilty to some charges, a decision is deferred with respect to a plea agreement calling for the dismissal of other charges and the District Judge later rejects the plea agreement based on information contained in the PSR. Fed.R.Crim.P. 11(e). Moreover, it has been held that, since the adoption of § 6B1.1(c), acceptance of a guilty plea to some charges does not prevent a District Judge from using information in the PSR as a basis for later rejecting a plea agreement providing for the dismissal of other charges even where there was no express deferral of a decision regarding the plea agreement. *Cordova–Perez*, 65 F.3d at 1556; *Fields*, 963

---

4. As a result of subsequent amendments to Rule 32, the provision prohibiting disclosure of the PSR is now contained in Rule 32(b)(3).

F.2d at 108. Here, the Court did explicitly defer any decision with respect to the acceptability of the plea agreement pending review of the PSR.

In short, in this case, there was no violation of either the letter or spirit of Rule 32. The Court accepted Ajayi's guilty plea to Count I and did not later unilaterally vacate it over Ajayi's objection. Furthermore, at the time the Court accepted the plea, it expressly reserved decision with respect to the plea agreement pending examination of the PSR. Later, when the Court rejected the plea agreement, it afforded Ajayi an opportunity to withdraw his plea in accordance with the provisions of Rule 11(e)(4).

■ To the extent that Ajayi might be prejudiced by the fact that the Court has reviewed the PSR before an adjudication of the charges contained in Count II (or before adjudication of the charges contained in Count I if Ajayi is later permitted to reconsider his decision and withdraw his plea to Count I) any potential prejudice can be eliminated by referring this case to a different judge. The purpose of limiting disclosure of the PSR is to prevent the dissemination of unfavorable information to the *trial judge* before the defendant is convicted. *Cordova-Perez,* 65 F.3d at 1555. The advisory committee's notes to 1974 amendments to Rule 32 indicate that this purpose is served when the judge who reviewed the PSR recuses himself or herself. The notes state that

> where the judge rejects the plea agreement after seeing the presentence report, he should be free to recuse himself from later presiding over the trial of the case. This is left to the discretion of the judge.

Fed.R.Crim.P. 32 advisory committee's note (1974 amendment). The First Circuit also has recognized that recusal is sufficient to prevent any prejudice that might flow from premature examination of the PSR. *United States v. Kurkculer,* 918 F.2d 295, 301 (1st Cir.1990) (review of PSR before conviction and without defendant's consent denies protection afforded by Rule 32 "*unless* [the defendant] is tried by a different judge") (emphasis added).

### C. Double Jeopardy

■ To the extent that *Cruz* is based on double jeopardy considerations, it rests on a premise that has been repudiated and presents a set of facts that are distinguishable from this case. *Cruz* suggested that double jeopardy attaches upon acceptance of a guilty plea and that, therefore, a plea can be vacated only upon a showing of manifest necessity. *Cruz,* 709 F.2d at 114. It is now well established that jeopardy attaches not upon acceptance of a plea but rather when sentence is imposed and a judgment is entered. *U.S. v. Santiago Soto,* 825 F.2d 616, 619 (1st Cir.), *cert. denied,* 493 U.S. 831, 110 S.Ct. 103, 107 L.Ed.2d 66 (1989) (citing *Brown v. Ohio,* 432 U.S. 161, 97 S.Ct. 2221, 53 L.Ed.2d 187 (1977)). Furthermore, even when a defendant pleads to and is sentenced to a lesser included offense, double jeopardy does not bar prosecution for the more serious charges if they remained pending at the time sentence was imposed. *Id.* at 619 (citing *Ohio v. Johnson,* 467 U.S. 493, 501–02, 104 S.Ct. 2536, 2541–42, 81 L.Ed.2d 425 (1984). Thus, to the extent that *Cruz* suggests that the Double Jeopardy Clause requires a showing of manifest necessity in order to vacate a guilty plea over the defendant's objection, it has been overruled. *Kurkculer,* 918 F.2d at 301 n. 9; *see also Soto,* 825 F.2d at 619–20.

■ In this case, it is clear that jeopardy has not yet attached with respect to either count. Ajayi has not been sentenced on Count I and has not even pled to the charge contained in Count II. In addition, Ajayi's guilty plea to Count I would not bar a prosecution on Count II because the charges in the two counts are based on two different incidents. Count I charges that on March 29, 1995, Ajayi made false statements in an application for a passport for himself. Count II, on the other hand, charges that on April 18, 1995, Ajayi made false statements in connection with an application for a passport for another. The Double Jeopardy Clause is not implicated when the offenses at issue are separate and distinct and occurred at different times. *United States v. Felix,* 503 U.S. 378, 385, 112 S.Ct. 1377, 1382, 118 L.Ed.2d 25 (1992); *see also United States v. Banks,* 10 F.3d 1044, 1050 (4th Cir.1993), *cert. de-*

*nied,* —— U.S. ——, 114 S.Ct. 1850, 128 L.Ed.2d 475 (1994) (double jeopardy does not prohibit charging two violations of the same statute where the conduct in question took place on different dates); *United States v. Farmigoni,* 934 F.2d 63, 65 (5th Cir.1991), *cert. denied,* 502 U.S. 1090, 112 S.Ct. 1160, 117 L.Ed.2d 407 (1992) (same); *United States v. Easley,* 927 F.2d 1442, 1451–52 (8th Cir.), *cert. denied,* 502 U.S. 868, 112 S.Ct. 199, 116 L.Ed.2d 158 (1991) (double jeopardy did not bar multiple count prosecution for violation of the same statute where conduct involved mailing the same obscene material to different addresses on different dates).

### Conclusion

For all of the foregoing reasons, the Court hereby rejects the plea agreement on the ground that it requires the government to move for dismissal of Count II. In addition, because this Court has reviewed the PSR, it recuses itself from further consideration of this case and directs that the case be reassigned to another judge for trial.

IT IS SO ORDERED.